RICE v. GOODRIDGE ET AL.

9   237<br>8a 288

1. Errors, under the rule of this court, must be particularly specified.
2. Where a party stipulates that written instructions may not be given to the jury prior to the arguments, as provided by statute, cannot be heard, upon appeal, to found any complaint upon a right thus waived.
3. It is the duty of the court to make any and all corrections of the instructions, when reduced to writing, necessary to their validity.

*Appeal from County Court of Arapahoe County.*

THE appellees, Goodridge & Marfell, brought suit before a justice of the peace against the appellant, Rice, to recover upon a bill for lime furnished by said firm upon the order of one I. N. Marcy. The original amount of the bill was $226.50, but it appeared to have been reduced to a balance of $169.50 by two payments credited thereon as made by the defendant, one of $25 and the other of $32. The justice rendered judgment in favor of the plaintiffs for the sum of $135.60, from which judgment the defendant appealed to the county court. On trial in the county court, to a jury, a verdict for $174.45 in favor of the plaintiffs was returned, and judgment entered thereon.

The origin of the transaction was as follows: B. H. Bayles, of the city of Denver, entered into a contract with Marcy, who was a contractor and builder, for the erection by Marcy of two double brick dwelling-houses, upon certain premises of Bayles, situated in Denver. The contract obligated Marcy to provide, at his own ex-

pense, all materials and labor for the construction of these buildings; to erect the same according to the plans and specifications of the contract; and to have them completed and ready to turn over to Bayles by a certain date mentioned, under penalties therein provided for non-compliance with the terms of the contract. The contract price of the whole undertaking was the sum of $16,475, to be paid in ten separate instalments, each one to become payable when the work should reach a certain stage of advancement, particularly described in the contract. Bayles required the contractor, Marcy, to furnish security for the performance of the contract, in the manner and within the time mentioned therein. Defendant Rice executed to Bayles his bond, guarantying the performance of the contract on the part of Marcy; and it appears that, in order to protect himself, he required that all moneys to be paid by Bayles to Marcy should pass through his hands, to be by him paid out for labor and materials, on the order of the contractor. Marcy agreed to this arrangement, and executed a written order to Bayles, to pay all moneys to become due him on said contract over to Rice. The plaintiffs, Goodridge & Marfelt, being requested by Marcy to furnish lime for the buildings, one of them (Goodridge) applied to Rice for information as to the provisions made for the payment of bills for materials, and who was to pay them. Such information was given as induced the plaintiffs, according to their testimony, to furnish the lime mentioned in the bill sued on. After the lime had been furnished, and the bill therefor made out, Marcy wrote the following order: "*Mr. S. A. Rice:* Please pay the above bill, and charge to the Bayles contract. IRA N. MARCY." On presentation to Rice he refused to pay the bill, and in from one to two months thereafter suit was brought thereon.

Mr. J. W. HORNER, for appellant.

Mr. WM. B. MILLS, for appellees.

BECK, C. J. The trial in the county court being *de novo*, and there being no written pleadings in the case, we must depend upon the proceedings had on that trial for the respective theories of the plaintiffs and defendant as to the basis of the right of recovery on the one side, and the defense thereto on the other.

The first error assigned relates to the admission of incompetent and irrelevant testimony. This assignment is not specific, as required by our rules, and we will therefore notice only such objections raised in the argument as relate to the basis and right of recovery. *Colorado Cent. R. Co. v. Smith*, 5 Colo. 160; *Hanna v. Barker*, 6 Colo. 303.

In order to pass upon the competency of the testimony, it is necessary to inquire into the legal *status* of the defendant Rice, and into the nature and extent of his undertakings. A review of the whole record, including the testimony, rulings and instructions, indicates very clearly that the plaintiffs based their right of recovery upon the legal duty of the defendant to pay their account out of the building fund; all of which, by the arrangements, undertakings and agreements of Bayles, Marcy and Rice, was to pass through the hands of Rice, to be by him paid out for materials and labor on the orders of Marcy. Bayles, the owner of the premises on which the buildings were to be erected, required Marcy to give security for the faithful performance of his contract in accordance with its conditions and specifications. Rice became the guarantor of the contract by the execution of a bond to that effect to Bayles. Rice, for his own protection, required Marcy and Bayles to so modify their agreement that all moneys payable to Marcy under the contract should be paid to Rice. This was effected by an order, executed by Marcy and addressed to Bayles, directing him to make all payments to Rice, which was done, as the testimony shows, upon Rice's agreement to pay out the money for materials and labor on the orders

of Marcy. We conclude, therefore, that, by virtue of the agreements and arrangements so made by the parties, Rice became the trustee or custodian of the funds, with the imposed and accepted duty of paying the same out upon the orders of Marcy, on bills for labor performed and materials furnished for the erection of the buildings. This, we think, is the legitimate conclusion to be reached from a consideration of the testimony and proceedings contained in the record, and we think the testimony of the defendant himself supports such conclusion.

The appellant seems to rely, for a reversal of the judgment obtained against him, mainly upon the proposition that the recovery was claimed and obtained on an alleged promise of Rice to become personally responsible for the payment of these bills. But this last proposition is not supported by the record. In our judgment, it is inconsistent with everything therein contained, except the oft-repeated declaration of the defendant that he declined to become personally responsible. Plaintiffs sought to recover a personal judgment against the defendant, but this was based on the ground of a misapplication by the defendant of funds intrusted to him for the payment of this account, and his failure and refusal to pay the same out of such funds, and not upon a promise to become personally responsible as a contractor.

Among other objections urged to the admission of evidence are objections to the introduction of the building contract; the bond of the defendant guarantying the performance of the contract; the order of Marcy to Bayles to pay Rice all moneys accruing to him on the contract; and the oral testimony tending to show when the estimates severally became payable; also whether the same were in fact paid to defendant Rice as they matured, or about the times of the maturity thereof. We perceive no error in the admission of any of this evidence. So far as the documentary and written evidence is concerned, it was competent for the following purposes,

that is to say: The contract, to show that the total amount of money to be paid by Bayles for the construction of the building was to become due and payable in ten instalments, or "estimates," as they were termed by the counsel and witnesses; that those estimates were of different amounts, and not payable at stated periods of time, *but payable at certain stages of the work*, particularly specified in the contract. The bond was competent to show the relation which Rice occupied with respect to the parties, and his interest in the faithful performance of Marcy's contract; and the order on Bayles to pay over the funds to Rice was corroborative of Rice's alleged undertaking to pay out the moneys for materials and labor upon the orders of Marcy. The purpose of the oral testimony referred to in the objection was to show payment to Rice of the instalments as 'they matured; and particularly to show that before suit brought he had received money from Bayles, properly applicable to the payment of the plaintiffs' bill for materials which he had refused and neglected to pay.

The fourth error assigned is that the verdict was contrary to the evidence, and rendered without regard to the instructions of the court. A review of the whole evidence, in our judgment, authorized the jury to find that all the conditions existed which established the liability of the defendant to pay the bill sued upon. It was not disputed that the materials mentioned in the bill were furnished by the plaintiffs for these buildings; that the bill was correct; and that the defendant was directed by Marcy to pay it by an order indorsed thereon; also that Rice refused to pay it. The evidence shows that the plaintiffs brought themselves into privity of contract with the defendant in respect to his undertaking to pay these bills. This is shown by the testimony of both parties. Goodridge details an interview between himself and Rice, had, as he says, before furnishing any materials for the buildings. As to the time of the interview he

is supported by the testimony of Marcy, and contradicted by the testimony of Rice. Goodridge swears that he told defendant that Marcy had applied to his firm to supply materials for the Bayles buildings, and had informed them that he (Rice) was going on his bond; also that they did not want to supply any materials until they knew who would pay for them. Mr. Goodridge testified further: "I asked him if he would be responsible for the payment of the bills for materials. He said he was to receive the money for the whole of the work. No money was to pass through Marcy's hands. As the work progressed, and materials were furnished, he would pay the bills." This is all there is in the case on which to found the charge that the recovery was based upon an alleged promise of Rice to become personally responsible. The question was asked the defendant whether he would become responsible for the payment of the bills. Defendant's answer, according to the testimony of both parties, was substantially a promise to carry out the arrangements before mentioned which had been made for the payment of the bills. Rice nowhere promised to pay out his own money. It was only "as the work progressed" that any money from Bayles would be received by him. When it had progressed far enough to make an instalment due, and when the same was paid over to him, it then became his duty, upon the orders of Marcy, out of this money to pay the bills for labor and materials that entered into that particular estimate or instalment. If the amount of any estimate should fall short of paying all the bills included within it, defendant would not be liable to pay the balance thereof until supplied with money for this purpose. These were the inferences which we think the jury were authorized to draw from the entire testimony.

The defendant says this interview was after most of the lime had been delivered, but he is evidently mistaken in this, since both Goodridge and Marcy agree that the

interview occurred before any lime was furnished, to wit, September 5, 1881. Defendant further denies that Goodridge spoke to him about lime at all, saying the conversation was about brick. This is wholly immaterial, for he admits the plaintiff used these words: "That Marcy had been to Goodridge & Marfell to supply material for the Bayles buildings; that I was going on the bond, and he didn't propose to furnish any material until he knew who would pay for it." Here, then, was a direct inquiry, calling for the disclosure of defendant's relations to the building contract, and to the parties thereto; also for information as to the extent of the defendant's liability. The substance of defendant's replies to Goodridge, as stated by himself, is: "I told him I would be bondsman, and as bondsman would receive the money; that I would not be responsible for anything, but I would distribute the money, on Marcy's orders, to the best advantage of the building contract." This is what the defendant says he told Goodridge, but he claimed on the trial that he had a discretion as to preferring certain classes of bills for payment over other bills, and that his meaning was: " Labor bills must be paid first, and then the others would get their money as I had it to pay." We observe here that the defendant's liability depends upon his original undertaking, and his explanations to Goodridge concerning the same, when the latter applied to him for information as to who would pay for materials to be furnished; and that his liability cannot be limited to what he may have then secretly meant but did not disclose.

The evidence shows that plaintiffs furnished the materials in this bill upon the strength of the defendant's statement, and upon his promises to pay out the funds as above set forth. The discretion claimed by the defendant to prefer bills, in the payment of the moneys coming into his hands, rests upon his own testimony. We find no authority given him to reject payment of any bill ordered by Marcy to be paid, when funds had been supplied him

for its payment. Had Marcy attempted to divert the funds to other purposes, defendant would then have been in a position to reject payment of his orders; or if orders were drawn upon him when no funds had been supplied for their payment, he would not be liable under any view of the present case. It is to be presumed, if any such defenses in his favor existed, he would have stated the same positively, and without equivocation. Defendant's answers upon these points were indefinite and evasive. Referring to Goodridge's demand for payment of his bill, defendant says: "I told him I had no money in my hands;" but he did not swear that this statement to the plaintiff was true, nor that the instalment out of which the bill was payable had not been received, or that it was insufficient to pay all bills intended to be thereby provided for. We insert some specimens of his answers: He was asked, on cross-examination, how much money he had received up to the time this bill was presented, and if he had not received money for an estimate which included the materials in this bill. Instead of answering the question as propounded, his answer was: "I had received all that was due up to that time, excepting when it was delayed." The next inquiry was whether, at the time this suit was brought, he had received pay for all estimates, including the materials furnished in this bill. He answered: "I received all that had been paid." The following question was then propounded: "Question. Had any money been paid that included these materials? Answer. I think not." Defendant testified that there was a shortage of funds to complete the buildings, but he did not state at what point in the progress of the work the shortage occurred, or was discovered, or that it had anything to do with his refusal to pay the bill in suit. Considering the unsatisfactory character of the defendant's testimony as to whether or not he had received the money from Bayles applicable to the payment of the plaintiffs' bill, and considering also the testimony

introduced by the plaintiffs on the same point to show he did receive such money, we discover no foundation for the error charged in the fourth assignment of error,—that the verdict was contrary to the evidence.

The fifth assignment is: The verdict is excessive, and more than was asked for by the plaintiffs. The amount of the verdict was the balance remaining due on the bill, with the addition of legal interest. The only grounds relied upon for charging the verdict to be excessive are that the justice of the peace had rendered a judgment for twenty per cent. less than the amount due, and that, in a desultory conversation between the attorneys of the respective parties in the county court, plaintiffs' counsel had remarked that they could recover eighty per cent. of their bill. There is absolutely nothing in the record of the trial to warrant a finding for any sum less than the full amount of the bill, which amount was conceded on the trial to be due. There is nothing in the building contract reserving the twenty per cent., as was shown by the contract itself, and by the testimony of Marcy, save that the last instalment is a heavy one, evidently not based on a final estimate of the expense of construction, but upon the balance due on the contract. No doubt the profits of the contractor were reserved to the last or tenth instalment. The several instalments were designated throughout the trial, both by parties and witnesses, as "estimates." This term is significant, as applied to payments upon building contracts of this character, where each instalment matures upon reaching a certain stage or progress in the work. The amount of the instalment would appear to be based upon an estimate of the expenses which would be necessarily incurred in the performance of the designated portion of the contract. In such case, the presumption would be that each estimate so ascertained would be sufficient, when the money was paid, to satisfy all claims for mate-

rials furnished, as well as for labor performed upon the building, for the work specified.

The second assignment of error is: "The court erred in giving the second instruction asked for by the plaintiffs, or by his own motion." The second instruction, as finally given, was: "If you find from the evidence that the defendant promised to pay the money upon the order of Marcy, as materials were furnished, and you also find from the evidence the materials were furnished and the order given for this payment while the defendant had money in his hands, or if he received it afterwards to apply on the contract, then your verdict should be for the plaintiffs." Two principal objections are urged to this instruction: *First*, that it was not based upon the evidence; *second*, that it was modified after being given orally to the jury.

The first objection is practically the same objection which was urged against the verdict by the fourth assignment of error, already considered. There is no more ground for the objection that this instruction was not based upon the evidence than that the verdict was contrary to the evidence and opposed to the instructions. The variance claimed between the instruction and the evidence is that plaintiffs in producing their evidence sought to recover upon an alleged promise made by Rice to become personally responsible for the payment of their account, whereas this second instruction places the liability of the defendant upon his *receipt of the funds*, and the *order of the contractor to pay his bill out of the same*. It is unnecessary to again discuss this point. We have shown that it is not well taken. The inconsistency of the objections and arguments is forcibly made to appear in the discussion of the objections to the evidence under the first assignment of error. Objections were there urged against the admission of evidence tending to show the following facts: The defendant's fiduciary re-

lation to the parties; that his undertaking was to pay out the moneys to be placed in his hands by Bayles, and upon the orders to be drawn on him by Marcy; also that, in so far as the present claim is concerned, the money for its payment was placed in the hands of the defendant, and that he was ordered to pay it. This is the class of evidence the admission whereof was objected to as *irrelevant* and *misleading* to the jury; and yet, in the face of these objections to evidence introduced to show a fiduciary and not a personal obligation on the part of the defendant, which is in harmony with the view of the court as stated in the second instruction, the objection is made and insisted upon that this instruction was not based upon the very kind of evidence which the defendant sought so strenuously to keep out of the case.

The second objection to this instruction is that it was *modified* after its oral delivery to the jury. This is not a valid objection. The giving of the oral instructions was by virtue of a stipulation of the parties. The oral instructions are not before us for any purpose, and the only valid objections that could be urged to the written instructions would be such as might be assigned in other cases. By stipulation of the parties, the jury was instructed orally before the arguments, the instructions to be taken down in writing, corrected, and given to the jury after the arguments. That written instructions were not given to the jury prior to the arguments, as required by law, is due to the defendant's stipulation, and he cannot now be heard to found any complaint upon rights thus waived. It was the duty of the court to make any and all corrections of the instructions, when reduced to writing, necessary to their validity. The mere fact that this instruction was modified is not a ground of error.

The right of recovery in this case was largely a question of fact, to be arrived at from a careful examination

and comparison of the evidence, under correct instructions. We see no cause for interfering with the manner in which either the court or the jury discharged its duty. The judgment is therefore affirmed.

*Affirmed.*